[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION TO SUPPRESS
 I. FACTUAL AND PROCEDURAL BACKGROUND
The defendant moves to suppress all physical evidence and oral and written statements made following a search of his person and residence on July 16, 2001. Specifically, the defendant alleges that the affidavits in support of the search warrants lacked probable cause. He also argues that the warrants should be invalidated because the issuing judge failed to state the time he signed them, the defendant was not provided a copy of the warrants, and he was illegally placed in custody and transported to his residence after a search of his person failed to produce any evidence.
The Wethersfield Police Department conducted a search of the defendant on July 16, 2001 at the New Britain courthouse pursuant to a warrant signed on July 10, 2001 by Judge Wollenberg. The warrant[1] authorized the search of the defendant's person for six firearms which allegedly were sold to him by one Gerassimos Balomenos. No weapons or contraband were found at this time. The defendant was then transported to his residence at 76 Barbour Road in New Britain where another search was conducted by the Wethersfield and New Britain Police Departments. This search purportedly was conducted pursuant to a second warrant[2] signed by Judge Wollenberg on July 10, 2001; however, the defendant contests its authenticity. The defendant admitted that he had purchased one of the six handguns that the police were looking for while the police were conducting the search. This search produced quantities of narcotics, firearms, cash, and related items. A third warrant[3] was then signed by Judge Wollenberg on July 16, 2001, authorizing a search of the defendant's residence for various narcotics, firearms, monies, and related items. The police seized fifty items of evidence pursuant to this warrant.
The defendant filed his motion to suppress tangible evidence and CT Page 12635 written and/or oral statements made by the defendant on July 9, 2002. He filed his memorandum of law in support of the motion on August 13, 2002. Argument was heard before this Court on August 22, 2002. The defendant filed a motion to have an evidentiary hearing relating to the motion to suppress on August 23, 2002. A hearing was held before this Court on August 29, 2002, and the defendant filed his supplemental memorandum of law in support of the motion to suppress on that date. He filed his second supplemental memorandum of law in support of the motion to suppress on September 12, 2002. The state filed its motion in opposition to the defendant's motion to suppress on September 19, 2002.
 II. DISCUSSION
The defendant's first argument is that the affidavit supporting the search warrant[4] of July 10, 2001 lacks probable cause because it "does not establish that Balomenos was a reliable informant nor is there any corroboration of Balomenos' statement" that he sold his six handguns to the defendant. Memorandum of Law in Support of Motion to Suppress Tangible Evidence and Written and/or Oral Statements made by the Defendant (hereinafter Defendant's Memorandum), p. 6. "The determination of whether probable cause exists under the fourth amendment to the federal constitution, and under article first, § 7, of our state constitution, is made pursuant to a "totality of the circumstances' test. Illinois v. Gates, 462 U.S. 213, 231-32, 103 S.Ct. 2317,76 L.Ed.2d 527
(1983); State v. Barton, 219 Conn. 529, 544, 594 A.2d 917 (1991). Under the Gates test, a court must examine all of the evidence relating to the issue of probable cause and, on the basis of that evidence, make a commonsense, practical determination of whether probable cause existed."State v. Smith, 257 Conn. 216, 223, 777 A.2d 182 (2001). "The `totality of the circumstances' analysis . . . considers the reliability of the confidential informant and the informant's basis of knowledge as significant factors in determining whether a confidential informant's tip has furnished probable cause to justify a search or an arrest." (Internal quotation marks omitted; citations omitted.) State v. James, 261 Conn. 395,419 fn 27, 802 A.2d 820 (2002).
As the defendant recognizes, the person providing the police with the information in this case was not a confidential informant. See Supplemental Memorandum of Law in Support of Motion to Suppress Tangible Evidence and Written and/or Oral Statements Made by the Defendant (hereinafter Defendant's Supplemental Memorandum), p. 3. "The first circumstance supporting an inference of veracity' or "reliability' is the fact that the informant was not anonymous. State v. Barton, supra,219 Conn. 550. Balomenos provided the police with a signed sworn statement that he had sold all of his six handguns to the defendant CT Page 12636 approximately a month prior to the date of the statement without doing the required paperwork. "Because his identity was known to the police, the informant could expect adverse consequences if the information that he provided was erroneous. Those consequences might range from a loss of confidence or indulgence by the police to prosecution for the class A misdemeanor of falsely reporting an incident under General Statutes53a-180, had the information supplied proved to be a fabrication." Id. 550-51.
More significantly, however, Balomenos admitted to illegally transferring the six handguns to the defendant. This admission subjected him to prosecution for six counts of illegal sale, delivery or transfer of pistols and revolvers in violation of General Statutes § 29-33, a class D felony. "People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions. Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility — sufficient at least to support a finding of probable cause to search. . . . Although the informant's motive may be no loftier than the hope of leniency on other charges or the promise of a payment, courts have thought that one who knows the police are already in a position to charge him with a serious crime will not lightly undertake to divert the police down blind alleys." (Citations omitted; internal quotation marks omitted.) State v. Barton, supra,219 Conn. 551.
The police thereafter conducted further investigation and corroborated Balomenos' statement. They received confirmation from the Department of Motor Vehicles that there is a Daniel Baba who resides in New Britain, and they obtained a motor vehicle license photograph of the defendant. Bolomenos positively identified the person in the photograph as Danny Baba. They confirmed that the defendant did not hold a valid pistol permit and that all of the handguns were still registered to Balomenos.
The defendant further argues that the affidavit provided no basis for the issuing judge to conclude that the guns would be found in his residence. "Probable cause to search exists if: (1) there is probable cause to believe that the particular items sought to be seized are connected with criminal activity or will assist in a particular apprehension or conviction . . . and (2) there is probable cause to believe that the items sought to be seized will be found in the place to be searched." (Internal quotation marks omitted.) State v. Smith, supra,257 Conn. 223. The affidavit provides sufficient facts to establish that Balomenos transferred his handguns to the defendant, and it is a reasonable inference that the defendant kept them in his home. See Statev. Shifflett, 199 Conn. 718, 747, 508 A.2d 748 (1986) (stating that CT Page 12637 "[t]he affidavit sets forth sufficient facts to sustain a reasonable belief that the defendant possessed the Basque .380, and the issuing judge could reasonably have inferred that the defendant kept it in his apartment"). The affiants also stated that, based on their training and experience, they know that those who own firearms generally maintain possession of them for long periods of time because they are expensive and do not wear out, and they generally keep them in their residence where their personal property is stored.
The Court concludes that, based upon the totality of the circumstances, the affidavits presented a substantial factual basis to support the conclusion of the issuing judge that probable cause existed to search the residence of the defendant. See State v. Respass,256 Conn. 164, 172, 770 A.2d 471, cert. denied, 122 S.Ct. 478,151 L.Ed.2d 392
(2001) (stating that "[w]hen a magistrate has determined that the warrant affidavit presents sufficient objective indicia of reliability to justify a search and has issued a warrant, a court reviewing that warrant at a subsequent suppression hearing should defer to the reasonable inferences drawn by the magistrate") (Internal quotation marks omitted). Probable cause was not found, as alleged by the defendant, solely on the opinion of a government agent. See Defendant's Supplemental Memorandum, pp. 4-5.
The defendant also argues that the affidavit provided no basis for the issuing judge to conclude that the guns would be found on his person. The Wethersfield Police Department met the defendant and executed this search warrant at the New Britain courthouse. A search of the defendant's person produced no physical evidence, and according to the testimony and the memoranda, the defendant did not make any incriminating statements at that time that he seeks to suppress. The warrant for the search of the defendant's person was issued and executed separately from the warrant for the search of the defendant's residence. The defendant was transported from the location of the execution of the warrant for the search of his person to his residence where the warrant for the search of his home was executed. It was at this time and place that physical evidence was discovered and statements allegedly were made by the defendant. Therefore, because the warrant for the search of the defendant's person produced no evidence or statements by the defendant, and this warrant had no relation to the warrant for the search of the defendant's residence or any evidence seized or statements made at that time and place, the Court declines to rule and finds this issue moot.
The defendant argues that "[t]he affiants misled the magistrate by knowingly and recklessly disregarding the truth in not revealing the prior inconsistent and unreliable statements made by Balomenos." CT Page 12638 Defendant's Memorandum, pp. 11-12. Specifically, he alleges that "[i]n the July 10, 2001 affidavit, the affiants do not reveal to the magistrate that Balomenos had provided conflicting information as to the whereabouts of the six handguns and that he had initially claimed to still be in possession of the handguns before making any claim that he had sold said handguns to the defendant." Id. 10.
"Not all omissions, however, even if intentional, will invalidate an affidavit. . . . In fact, an affiant may omit facts that he believes to be either immaterial or unsubstantiated. . . . Thus, before a defendant is entitled to a Franks hearing[5] for an alleged omission, he must make a substantial preliminary showing that the information was (1) omitted with the intent to make, or in reckless disregard of whether it made, the affidavit misleading to the issuing judge, and (2) material to the determination of probable cause. . . . Even if the affiant `picks and chooses' the information that he includes in the affidavit, there is no Franks violation if, had the magistrate been so advised, he still would have been justified in issuing the warrant." (Citations omitted.) Statev. Bergin, 214 Conn. 657, 666-67, 574 A.2d 164 (1990).
The Court finds that the information was not omitted with the intent to mislead the issuing judge, and is not material to the determination of probable cause. It is not unusual for a suspect to initially deny involvement in criminal activity until confronted with undeniable facts which causes him to be more willing to cooperate. The defendant offers no evidence that the affiants intended to mislead the magistrate when they failed to include the fact that Balomenos initially told the police that the guns were in his closet. This information was immediately checked by the police officers who were executing the warrant and found to be false. Balomenos then admitted to selling the handguns to the defendant. As stated previously, this statement is reliable because Balomenos admitted to committing several serious crimes himself when he implicated the defendant. The affiants reasonably could have considered Balomenos's original story to be immaterial, and its inclusion in the affidavit would not have affected the determination of probable cause. See State v.Weinberg, 215 Conn. 231, 241, 575 A.2d 1003, cert. denied, 498 U.S. 967,111 S.Ct. 430, 112 L.Ed.2d 413 (1990) (concluding that "even had the challenged omissions been included in the affidavits, the facts contained therein would have been sufficient to support a finding of probable cause to issue the search warrants"). For the same reason, the Court does not agree with the defendant's assertion that, "[biased on the totality of their knowledge, the affiants could not have reasonably believed Balomenos was a reliable declarant." Defendant's Memorandum, p. 10.
Finally, the defendant argues that the failure of the issuing judge to CT Page 12639 indicate the time he signed the search warrants dated July 10, 2001, combined with other factors, should invalidate the warrants. The defendant concedes that General Statutes § 54-33a (c) states that "[t]he inadvertent failure of the issuing judge to state on the warrant the time of its issuance shall not in and of itself invalidate the warrant." He argues, however, that "the time of the signing was not the only deviation from the requirements of the Connecticut General Statutes and therefore not the only reason to invalidate the warrants." Second Supplemental Memorandum of Law in Support of Motion to Suppress Tangible Evidence and Written and/or Oral Statements Made by the Defendant (hereinafter Defendant's Second Supplemental Memorandum), p. 5.
The defendant's first argument in this regard is that "the initial date on [the first warrant to search the defendant's residence] appears to have been either a 16 or an 18 and has been written over to be a 10." Defendant's Second Supplemental Memorandum, pp. 3-4. Detective Dillon appears to have written a "0" over another number on page three of the warrant, which is the first page that is signed and dated by the affiants and the issuing judge. He clearly wrote 7-10-01 as the date on all other pages. The other affiant, Detective DeRoehn, and the issuing judge, Judge Wollenberg, clearly wrote 7-10-01 on page three and all other pages as the date they signed. The defendant has failed to offer any evidence of a forgery. It appears that Detective Dillon simply wrote the date that he signed page three of the affidavit incorrectly, and he thereafter corrected it.
The defendant's second argument is that he was arrested without probable cause after the search at the New Britain courthouse produced no evidence. This claim is without merit. The defendant was transported from the courthouse to his residence in order to execute the search warrant for 76 Barbour Road. There was no evidence produced at the hearing that the defendant was handcuffed, ordered into the police car, or in any way restrained or restricted in his movement. The defendant was not in custody at this time and was not under arrest prior to the search of his residence.[6]
The defendant's third argument is that the police officers did not leave him a copy of the warrant for the search of his residence as required by General Statutes § 54-33c (a). The defendant testified that on July 16, 2001 he received a copy of the warrant for the search of his person, but not a copy of the warrant for the search of his residence. Officer Dillon testified that he did not remember whether a copy of the search warrant dated July 10, 2001 for his residence was provided to the defendant, and the return on the warrant does not indicate that a copy was provided. The state argues that "[s]earch warrants number CT Page 12640 one and two were ordered sealed by Judge Wollenberg upon his signature on July [10, 2001]. This sealing order was for the specific period of time of two weeks. According to Connecticut General Statutes § 54-33c (a) the officers can dispense with providing the copies of the search warrant affidavit for this two week time period unless the sealing order is renewed by the prosecution." State's Motion in Opposition to Defendant's Motion to Suppress, pp. 3-4.
The Court finds that the evidence supports the defendant's allegation that a copy of the search warrant dated July 10, 2001 for his residence was not provided to him. The state's response that the sealing order eliminated the requirement of the police to deliver a copy of the warrant to the defendant is not supported by the law. General Statutes § 54-33c
(a) provides that:
A copy of such warrant shall be given to the owner or occupant of the dwelling, structure, motor vehicle or place designated therein, or the person named therein. Within forty-eight hours of such search, a copy of the application for the warrant and a copy of all affidavits upon which the warrant is based shall be given to such owner, occupant or person. The judge may, by order, dispense with the requirement of giving a copy of the affidavits to such owner, occupant or person at such time if the applicant for the warrant files a detailed affidavit with the judge which demonstrates to the judge that (1) the personal safety of a confidential informant would be jeopardized by the giving of a copy of the affidavits at such time, or (2) the search is part of a continuing investigation which would be adversely affected by the giving of a copy of the affidavits at such time, or (3) the giving of such affidavits at such time would require disclosure of information or material prohibited from being disclosed by chapter 959a.
(Emphasis added). Pursuant to the plain language of the statute, the sealing order pertains to the affidavits, not the warrant itself. The warrant simply describes the place to be searched and the property that is sought. It does not contain the identity of informants or any other sensitive or confidential information. The Court concludes that the Wethersfield Police Department failed to provide the defendant with a copy of the warrant dated July 10, 2001 for the search of his residence as required by General Statutes § 54-33c. CT Page 12641
However, "[g]enerally, statutes which require officers to exhibit or deliver a copy of the warrant are ministerial, and failure to comply does not void an otherwise valid search. Thus, a search is generally not invalidated by a nonprejudicial failure to display, serve, or leave a copy of the warrant or affidavit." 79 C.J.S., Searches and Seizures § 213 (1995). "Therefore, in order for the [defendant] to succeed on [his] motion to suppress because of a violation of General Statutes § 54-33c, [he] must demonstrate prejudice resulting from the violation." State v. Rosario, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. CR94-0095460 (October 25, 1994,Maiocco, J.). The defendant has failed to demonstrate how he was prejudiced by not receiving a copy of the warrant dated July 10, 2001 for the search of his residence. He received a copy of the warrant to search his person which listed the handguns that the police were looking for. He also received a copy of the warrant dated July 16, 2001 to search his residence. This warrant and return listed the narcotics and related items that were sought, as well as the inventory of items seized from his residence. The defendant has failed to establish how he was prejudiced, and therefore, the failure of the Wethersfield Police Department to provide the defendant with a copy of the warrant dated July 10, 2001 to search his residence is an inappropriate basis to invalidate the warrant or suppress the evidence or statements. See State v. Mancinone,15 Conn. App. 251, 268 fn 7, 545 A.2d 1131, cert. denied, 209 Conn. 818,551 A.2d 757 (1988), and cert. denied, 489 U.S. 1017, 109 S.Ct. 1132,103 L.Ed.2d 194 (1989) ("The defendant assumes without argument that a violation of General Statutes 54-33c would also require suppression of the evidence because it would mean that `the warrant was illegally executed,' within the meaning of General Statutes 54-33f (a) (5), our suppression statute. That is not at all clear.").
Therefore, in summation, the failure of the issuing judge to state on the warrant the time of its issuance does not in and of itself invalidate the warrant: The Court is not persuaded that the additional alleged deviations presented by the defendant should result in the invalidation of the warrant.
 III. CONCLUSION
Based upon the foregoing analysis, the defendant's motion to suppress tangible evidence and written and/or oral statements is denied.
Dated at New Britain, Connecticut this fourth day of October 2002.
BY THE COURT, CT Page 12642 Owens, J.