STATE OF CONNECTICUT *v.* NIKOLAI A. ZARICK
(14465)

BORDEN, BERDON, NORCOTT, KATZ and DUPONT, Js.

Argued March 23—decision released August 17, 1993

*John R. Williams,* for the appellant (defendant).

*Timothy J. Sugrue,* assistant state's attorney, with whom were *John M. Massameno,* senior assistant state's attorney, and, on the brief, *John M. Bailey,* state's attorney, for the appellee (state).

NORCOTT, J. The defendant, Nikolai A. Zarick, appeals from the judgment of conviction, following conditional pleas of nolo contendere pursuant to General Statutes § 54-94a,[1] to the following charges: (1) one count of employing a minor in an obscene performance in violation of General Statutes § 53a-196a; (2) one count of sexual assault in the first degree in violation of General Statutes § 53a-70; (3) four counts of being an accessory to risk of injury to a child in violation of General Statutes §§ 53a-8 and 53-21; (4) eight counts of sexual assault in the second degree in violation of Gen-

[1] General Statutes § 54-94a provides: "CONDITIONAL NOLO CONTENDERE PLEA. APPEAL OF DENIAL OF MOTION TO SUPPRESS OR DISMISS. When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure, motion to suppress statements and evidence based on the involuntariness of a statement or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

eral Statutes § 53a-71 (a) (1); (5) three counts of risk of injury to a child in violation of General Statutes § 53-21; (6) one count of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1) (A); (7) twelve counts of being an accessory to sexual assault in the second degree in violation of General Statutes §§ 53a-8 and 53a-71 (a) (1); and (8) two counts of conspiracy to commit risk of injury to a child in violation of General Statutes §§ 53a-48 and 53-21.[2] Following

[2] General Statutes § 53a-196a provides in part: "EMPLOYING A MINOR IN AN OBSCENE PERFORMANCE: CLASS A FELONY. (a) A person is guilty of employing a minor in an obscene performance when (1) he employs any minor, whether or not such minor receives any consideration, for the purpose of promoting any material or performance which is obscene as to minors, notwithstanding that such material or performance is intended for an adult audience, or (2) he permits any such minor to be employed, whether or not such minor receives any consideration, in the promotion of any material or performance which is obscene as to minors, notwithstanding that such material or performance is intended for an adult audience, and he is the parent or guardian of such minor or otherwise responsible for the general supervision of such minor's welfare."

General Statutes § 53a-70 provides in part: "SEXUAL ASSAULT IN THE FIRST DEGREE: CLASS B FELONY: ONE YEAR NOT SUSPENDABLE. (a) A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person, or (2) engages in sexual intercourse with a person under thirteen years of age, or (3) commits sexual assault in the second degree as provided in section 53a-71 and in the commission of such offense is aided by two or more other persons actually present."

General Statutes § 53a-8 provides in part: "CRIMINAL LIABILITY FOR ACTS OF ANOTHER. (a) A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

General Statutes § 53-21 provides: "INJURY OR RISK OF INJURY TO, OR IMPAIRING MORALS OF, CHILDREN. Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to

this plea, the defendant was sentenced to a term of imprisonment of twenty-eight years. The defendant appealed to this court pursuant to General Statutes § 51-199 (b) (3).[3]

The defendant claims that the denial of his motion to suppress evidence seized pursuant to the search warrant was improper because: (1) the trial court refused the defendant's request to require the testimony of Judge Anne C. Dranginis, who had issued the search warrant, and Judge Charles D. Gill, who the defendant claims abandoned his judicial role by providing the police with a Federal Bureau of Investigation pamphlet concerning the preparation of warrants in child molestation cases; (2) the search warrant was issued by a judge who was not neutral and detached; (3) the issuance of the warrant and the seizures that were conducted pursuant to it violated the first amendment to the United States constitution as applied to the states

impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

General Statutes § 53a-71 provides in part: "SEXUAL ASSAULT IN THE SECOND DEGREE: CLASS C FELONY: NINE MONTHS NOT SUSPENDABLE. (a) A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and such other person is (1) under sixteen years of age . . . ."

General Statutes § 53a-73a provides in part: "SEXUAL ASSAULT IN THE FOURTH DEGREE: CLASS A MISDEMEANOR. (a) A person is guilty of sexual assault in the fourth degree when: (1) Such person intentionally subjects another person to sexual contact who is (A) under fifteen years of age . . . ."

General Statutes § 53a-48 provides in part: "CONSPIRACY. RENUNCIATION. (a) A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[3] General Statutes § 51-199 (b) provides in relevant part: "The following matters shall be taken directly to the supreme court . . . (3) an appeal in any criminal action involving a conviction for a capital felony, class A felony, or other felony, including any persistent offender status, for which the maximum sentence which may be imposed exceeds twenty years . . . ."

by the due process clause of the fourteenth amendment; (4) the warrant was issued without probable cause; (5) the warrant was sufficiently vague to render it general and overbroad; (6) seizures were made by the police that were not authorized by the warrant; (7) development of film seized by the police constituted an additional search that required securing a second warrant to authorize that search under the United States and Connecticut constitutions; and (8) the acquisition by the Massachusetts police of 194 photographs constituted an illegal seizure of those photographs, thus tainting the subsequent issuance of the warrant. The defendant also claims that he was convicted of multiple crimes arising out of a single offense, which constituted a violation of the fifth amendment to the United States constitution as applied to the states by the due process clause of the fourteenth amendment and the separation of powers provisions of article second of the Connecticut constitution. We now affirm the judgment of the trial court.

The trial court found the following facts in connection with the defendant's motion to suppress. On or about August 19, 1987, Robin Zarick, the wife of the defendant, left several rolls of film at a Shop Rite supermarket in Bristol to be developed. The film was forwarded to Guardian Photo (Guardian), a commercial developing laboratory in Auburn, Massachusetts. Guardian had a company policy to bring to the attention of the police questionable photographs sent to it for development.

On August 21, 1987, Guardian's plant manager brought the Zarick photographs to the attention of the Auburn police department. On the basis of Robin Zarick's return address on the film developing envelopes, the Auburn police referred the matter to the police in Plymouth, Connecticut, and delivered the photographs to the Plymouth police department. These

photographs (hereafter, the Massachusetts photographs) consisted of 194 photographs, some of which depicted breasts and genitalia of children, as well as naked boys and girls in sexually explicit positions and poses. In addition, some of the Massachusetts photographs depicted costumed children wearing heavy makeup in sexually suggestive poses.

After viewing these photographs, officers of the Plymouth police department prepared a search warrant application for the Zarick estate in Plymouth. One of the officers responsible for preparing the search warrant application consulted Superior Court Judge Charles D. Gill for advice in connection therewith.[4] Judge Gill was known by the officer to be an expert in the area of abused and neglected children. Judge Gill provided the officers with a Federal Bureau of Investigation pamphlet and an investigative manual from the Center for Missing and Exploited Children.

Subsequently, on the evening of August 22, 1987, the Plymouth police took the completed warrant application to Judge Anne C. Dranginis for her review.[5] In addition to the warrant application, the officers brought with them the Massachusetts photographs for Judge Dranginis to examine. Judge Dranginis concluded that the warrant application showed probable cause for the crime of risk of injury to a child and issued the search warrant. The record does not indicate whether Judge Dranginis examined the Massachusetts photographs prior to or subsequent to the issuance of the warrant.

The warrant was executed on the morning of August 23, 1987. The police seized numerous items of

---

[4] The record indicates that this matter was the first instance of potential child molestation to have been investigated by these officers in some time, a fact which may account for the officers' desire to seek assistance in connection with the preparation of the warrant application.

[5] Judge Gill had instructed the officers to bring the warrant application, when complete, to another judge for review and issuance.

evidence, including sexually explicit photographs, undeveloped film, props and model release forms prepared by the defendant or Robin Zarick. The police also left a significant amount of evidence that they deemed not to fall within the ambit of items described in the warrant.

The defendant filed several motions to suppress evidence seized in connection with this search and to dismiss certain of the charges against him. The trial court denied these motions in part.[6] Following adverse rulings on these motions, the defendant entered pleas of nolo contendere to the thirty-two charges. This appeal followed the ensuing judgment of conviction.

## I

The defendant first claims that the trial court improperly refused to allow him to call Judge Dranginis and Judge Gill to testify at the suppression hearing. The defendant argued that such testimony was required to allow him to explore the extent and scope of assistance provided to the police by Judge Gill, and any possible communication between Judge Gill and Judge Dranginis that could have tainted the warrant process and Judge Dranginis' state of mind when she issued the warrant. We disagree.

## A

The defendant sought to call Judge Gill to determine whether he had discussed the warrant affidavit with Judge Dranginis prior to its issuance. There is no evidence in the record to indicate that such a discussion occurred.[7] The record also indicates that Judge Gill's

---

[6] The trial court did suppress several items of evidence, including a pair of handcuffs and a pornographic book.

[7] Indeed, given the speed with which the officers prepared the warrant application on Saturday, August 22, 1987, and then located Judge Dran-

assistance to the police consisted solely of providing a Federal Bureau of Investigation pamphlet and a manual from the Center for Missing and Exploited Children.[8]

The threshold for requiring the testimony of sitting Superior Court judges as witnesses is high. Such compulsion in Connecticut is disfavored because of concern with the interruption of court business as well as a desire to avoid abuse or harassment of sitting judges. *Woodward* v. *Waterbury,* 113 Conn. 457, 465, 155 A. 825 (1931); see also C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 7.8. To challenge the veracity or accuracy of statements made by an affiant in connection with the preparation of a warrant, a defendant must make a "substantial preliminary showing" of misconduct by the affiant. *Franks* v. *Delaware,* 438 U.S. 154, 155–56, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978); *State* v. *Rodriguez,* 223 Conn. 127, 144, 613 A.2d 211 (1992).[9]

A defendant challenging the role of an issuing judge in connection with the issuance of a warrant presents a claim analogous to the challenge of an affiant's statements under *Franks* v. *Delaware,* supra. Such a chal-

---

ginis during the evening of the same day at a public restaurant for the purpose of review and issuance of the warrant, it is unlikely that Judge Dranginis and Judge Gill would have had the opportunity for any of the contact upon which the defendant speculates.

[8] While it is unusual for the police to solicit assistance from a judge while preparing a warrant application, we can infer that here, the police were motivated by a desire to produce an application that would allow for quick issuance of the warrant given the potential ongoing danger to minor children.

[9] We note in this connection that the offer of proof required by *Franks* to mandate an evidentiary hearing "should be accompanied by a statement of supporting reasons," and that "[a]ffidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." *Franks* v. *Delaware,* 438 U.S. 154, 171, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).

lenge requires at a minimum the same substantial preliminary showing of misconduct that is required in the case of a challenge to an affiant's statements. Our review of the record indicates that there has been no showing by the defendant of any misconduct on the part of Judge Gill that would have justified calling him as a witness. Unsubstantiated, purely speculative assertions cannot substitute for such a showing.

## B

The defendant also sought to call Judge Dranginis to question her in connection with her viewing of the Massachusetts photographs. He claims that viewing the photographs may have influenced her decision as to the existence of probable cause by causing her to lose her neutrality. In the alternative, the defendant argues that viewing the photographs would have prevented a finding of probable cause by Judge Dranginis because the affidavit exaggerates the sexual content of the photographs. We disagree.

Although it is not in dispute that Judge Dranginis viewed some portion of the Massachusetts photographs, the record does not establish whether she viewed them before or after issuing the warrant.[10] Judge Dranginis'

---

[10] Officer Michael Luba of the Plymouth police department, one of the officers who delivered the completed warrant application and the Massachusetts photographs to Judge Dranginis, testified in relevant part:

"[Assistant State's Attorney:] Now, you testified concerning Judge Ann Dranginis' examination of the photographs from Auburn, Massachusetts?

"[Officer Michael Luba:] Yes.

"Q. Do you recall when she examined those photographs with regard to the signing of the warrant, whether it was before or after?

"A. No, I don't.

"Q. Do you recall whether she made any remark in addition to the remark that she found them disgusting?

"A. No, I don't recall any other remarks.

"Q. But she did examine them in your presence?

"A. Yes."

viewing of the photographs was irrelevant to the propriety of the issuance of the warrant, because the information contained within the four corners of the supporting affidavit was sufficient to allow a judge to find probable cause to issue the warrant.[11] *State* v. *Couture,* 194 Conn. 530, 536, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985).

The defendant made no preliminary showing that would have entitled him to an evidentiary hearing regarding any judicial misconduct by Judge Dranginis. The evidence that she, in fact, viewed some of the photographs was presented only because the trial court nonetheless permitted the defendant to examine the police officer regarding the facts surrounding the issuance of the warrant. Thus, this claim suffers from the same flaw as the claim regarding the refusal of the trial court to permit the defendant to call Judge Gill as a witness: the defendant did not make a sufficient preliminary showing of misconduct to warrant the extraordinary remedy of calling a Superior Court judge as a witness.

Furthermore, even if we were to regard the testimony of the police officer as the functional equivalent of an attempt by the defendant to make a substantial preliminary showing of misconduct, that showing was insufficient to mandate calling Judge Dranginis as a witness. If Judge Dranginis viewed the photographs after signing the warrant, there was not even an arguable impropriety on her part, because she had already properly performed her judicial task of viewing the war-

[11] Because we conclude that the facts contained within the warrant application were sufficient to allow the issuing judge to find probable cause to issue the warrant, we need not decide whether viewing photographs in connection with an otherwise inadequate warrant application would have been sufficient to allow a judge to issue the warrant.

rant application based upon the material disclosed within the four corners of the affidavit.

The defendant's claim, therefore, rests upon the assertion that Judge Dranginis viewed the photographs before signing the warrant, an arguably improper act only because the photographs, which were described by the affidavit, were not, however, specifically made part of the supporting affidavit. That claim also fails because of an insufficient preliminary showing of misconduct.

A Superior Court judge issuing a search warrant is presumed to have performed his or her function properly, until shown to the contrary. *State* v. *Diaz,* 226 Conn. 514, 544–45 n.17, 628 A.2d 567 (1993). The evidence adduced by the defendant in support of his assertion of impropriety on Judge Dranginis' part, however, was as consistent with the proper exercise of her duties as it was consistent with an arguable impropriety in the exercise of her duties. Given this equipoise in the defendant's purported preliminary showing, that evidence was insufficient to warrant further factual inquiry by the extraordinary remedy of calling Judge Dranginis as a witness.

The defendant's alternative claim, that viewing the photographs would illuminate a material misrepresentation in the affidavit supporting the warrant, is essentially a claim under *Franks* v. *Delaware,* supra, that the warrant affidavit was misleading. In *Franks,* the United States Supreme Court held that if a defendant makes "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary for a finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." Id., 155–56; see also *State*

v. *Rodriguez,* supra, 143; *State* v. *Weinberg,* 215 Conn. 231, 237, 575 A.2d 1003, cert. denied, 498 U.S. 967, 111 S. Ct. 430, 112 L. Ed. 2d 413 (1990). We have previously noted that "[t]here is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory . . . . There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." (Internal quotation marks omitted.) *State* v. *Rodriguez,* supra, quoting *Franks* v. *Delaware,* supra, 171.

Judge Dranginis' testimony was not necessary to resolve the claim that the Massachusetts photographs were misrepresented in the affidavit. The defendant did not make a substantial preliminary showing of impropriety in connection with the preparation of the warrant application by the Plymouth police or in the review of the warrant application by Judge Dranginis. He has simply raised unsupported claims. Consequently, there was no basis for a *Franks* hearing in this case.[12]

## II

The defendant claims that the search warrant that was issued, the seizures that were made pursuant to the warrant and the denial of the motion to suppress the evidence seized were all predicated upon a violation of the first amendment to the United States constitution as made applicable to the states by the due process clause of the fourteenth amendment. We disagree.

---

[12] We note in passing that, notwithstanding the fact that the defendant had not made the requisite substantial preliminary showing, with an abundance of caution, the trial court considered and rejected the defendant's allegation that the Massachusetts photographs were inaccurately described in the warrant application.

The defendant's claim is based on a reading of *State v. Palangio,* 24 Conn. App. 300, 303–304, 588 A.2d 644, cert. denied, 218 Conn. 911, 591 A.2d 813 (1991), which, he claims, holds that the photographing of naked children is a per se violation of General Statutes § 53-21,[13] and that such a per se rule violates the first amendment. The defendant has misread *Palangio,* and has misinterpreted the applicability of that decision to this case.

In *Palangio,* the Appellate Court indicated that in certain circumstances photographing naked or partially naked children can be a violation of § 53-21. That case does not, however, set forth a per se rule that such action is always a violation of § 53-21. Furthermore, the warrant application prepared by the Plymouth police sought evidence of the crime of risk of injury to a minor. The warrant application did not allege the existence of and did not seek to seize obscene material qua obscene material. The trial court correctly held that the photographs seized pursuant to the warrant constituted evidence of the crime of risk of injury to a child. The photographs memorialized situations created by the defendant that were likely to impair the health or morals of children. Such material is not protected by the first amendment. We are also unconvinced by the defendant's assertion that because of the "artistic merit" of the photographs seized, the warrant and the seizures thereunder should be subject to greater judicial scrutiny. Claims of artistic value do not override what is otherwise evidence of criminal activity. See generally *New York* v. *Ferber,* 458 U.S. 747, 761–64, 102 S. Ct. 3348, 73 L. Ed. 2d 1113 (1982).

### III

The defendant next claims that the search warrant was issued without probable cause. As a preliminary

---

[13] See footnote 2.

matter, we note that the defendant has not adequately raised this issue in his brief. Although his brief has a heading that makes reference to a lack of probable cause, the text of the argument that the defendant makes under that heading addresses the issue of the breadth of the warrant and the authority it conferred upon the police to seize particular items, issues we address in part IV of this opinion.

The defendant does not make any reasoned argument that the warrant and the underlying affidavit were insufficient to establish probable cause for the crime of risk of injury to a child. An appellant who fails to brief a claim abandons it; *State* v. *Tatum,* 219 Conn. 721, 742, 595 A.2d 322 (1991); *Liscio* v. *Liscio,* 204 Conn. 502, 507, 528 A.2d 1143 (1987); *Petrizzo* v. *Commercial Contractors Corporation,* 152 Conn. 491, 496, 208 A.2d 748 (1965); see generally Practice Book § 4065.

A liberal (and perhaps overly generous) construction of a single sentence of the defendant's brief,[14] however, could enable us to reach the question of probable cause for the issuance of the warrant. Giving the defendant the benefit of the doubt on the question of whether the issue of probable cause has been adequately raised on appeal, we conclude that probable cause existed for the issuance of the warrant.

The affidavit accompanying the warrant stated in relevant part that: (1) the police had 194 photographs in envelopes bearing the return address of Robin Zarick, the defendant's wife. These photographs "showed . . . children completely nude and partially clothed. The photos showed the vaginal area, breasts and penis area of the juveniles. That some of the photos showed

---

[14] Specifically, "[t]he affidavit upon which the warrant was issued did not in any sense allege that any of the 194 photographs was 'sexually explicit' and certainly a review of those photographs would confirm this fact."

the children dressed in costumes and with heavy makeup on their faces. Other photos showed the children caressing while nude and the children appeared to pose for some of the photos. . . . [T]he photos show young children in sexually explicit positions and caressing each other while naked and partially naked"; (2) the defendant was in one of the photographs holding a naked child; and (3) the defendant had been identified in four separate incident reports by the Waterbury police department as having been photographing young children from his vehicle, and that such activity is a modus operandi of child molesters.

The standard of review for an issuing judge's determination that probable cause existed to issue a search warrant is to consider the information before the issuing judge at the time of the issuance of the warrant, together with the reasonable inferences drawn from such information, in the light most favorable to the issuing judge's determination of probable cause. *United States* v. *Spears,* 965 F.2d 262, 268–71 (7th Cir.), cert. denied, U.S. , 113 S. Ct. 502, 121 L. Ed. 2d 438 (1992); *State* v. *Johnson,* 219 Conn. 557, 565, 594 A.2d 933 (1991); see generally *State* v. *Diaz,* supra, 536–40, and cases cited therein.

In determining whether probable cause exists to conduct a search, a "totality of the circumstances" test is used. *Illinois* v. *Gates,* 462 U.S. 213, 233, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983); *State* v. *Johnson,* supra, 562; *State* v. *Barton,* 219 Conn. 529, 545, 594 A.2d 917 (1991). "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois* v. *Gates,* supra, 232. In determining the existence of probable cause to search, the magistrate should "make a practical, commonsense decision whether, given all of the circumstances set forth in the affidavit . . . there is a fair

probability that contraband or evidence of a crime will be found in a particular place." Id., 238; *State* v. *Johnson,* supra, 563. "In making this determination [of probable cause], the magistrate is entitled to draw reasonable inferences from the facts presented. When a magistrate has determined that the warrant affidavit presents sufficient objective indicia of reliability to justify a search and has issued a warrant, a court reviewing that warrant at a subsequent suppression hearing should defer to the reasonable inferences drawn by the magistrate." (Internal quotation marks omitted.) *State* v. *Rodriguez,* supra, 135.

In the present case we conclude that the allegations, contained in the warrant application, of the existence of numerous photographs of naked children in sexually suggestive costumes and poses connected with the defendant, as well as the assertion that the defendant was engaged in conduct known to be a modus operandi of child molesters, was sufficient to allow a judge to find probable cause for the crime of risk of injury to a child. We therefore reject this claim of the defendant.

## IV

The defendant next claims that the search warrant was overbroad and general in violation of the fourth amendment to the United States constitution, as made applicable to the states by the due process clause of the fourteenth amendment, and article first, § 7, of the Connecticut constitution.[15] The defendant argues that the warrant was unconstitutionally general in two ways: (1) it authorized seizure of items to which no reference was made in the supporting affidavit; and

[15] The defendant has made only a cursory reference to article first, § 7, of the Connecticut constitution. He has failed adequately to raise a claim of enhanced protection under the state constitution. Thus, we consider only his fourth amendment claim. *State* v. *Perez,* 218 Conn. 714, 723, 591 A.2d 119 (1991).

(2) it authorized the seizure of broad categories of items in terms so general as to allow the executing officers to substitute their own judgment for that of the issuing judge. Either alleged defect, the defendant claims, rendered the issuance of the warrant unconstitutional. We disagree.

The text of the warrant authorized the seizure of the following items: "Sexually explicit photographs, negatives, slides, magazines, movies, videotapes, audiotapes, handwritten notes, photographs, art, sex education books, photograph albums and displays, photocopies of photographs or pictures, drawings and tracings, cut and paste pictures, articles of clothing, costumes, jewelry and personal items, charts and records, computers and peripheral equipment, sexual aids, video and photography equipment, Pedophile manuals, photographic reproduction materials, U.S. Flag torn at top near blue and white stars, bill board background with nude and partially clad children and adults, white shredded shirt, black bead necklace with large white teeth attached to it, black robe with white embroidered design on right shoulder, large wooden walking stick, gold and white colored fur hand warmers, black and white animal fur skin, black lace headband, black fur, leopard skin designed belt, pink and blue cloth type bracelet, 1981 Ford LTD bearing Ct. passenger registration plate 271DAF registered to Nikolai Zarick."

In reviewing a warrant application, a magistrate may apply ordinary dictates of common experience and common sense and may draw normal inferences from the facts alleged in the affidavit. *State* v. *Romano,* 165 Conn. 239, 245, 332 A.2d 64 (1973). The items that were not mentioned in the affidavit but were authorized to be seized by the warrant[16] could reasonably have been

---

[16] Those items were, specifically, a "U.S. Flag torn at top near blue and white stars, bill board background with nude and partially clad children

found by the issuing judge to have been the props and costumes depicted in the Massachusetts photographs that were described in the affidavit. There was no fourth amendment violation of the defendant's rights by the seizure of these items.

Similarly, we are unconvinced by the defendant's assertion that the warrant was drafted in terms so over-broad as to render it unconstitutional.[17] The description of items to be seized in a warrant need only be as specific as the circumstances and the nature of the activity under investigation permit. *State* v. *Ruscoe,* 212 Conn. 223, 234, 563 A.2d 267 (1989), cert. denied, 493 U.S. 1084, 110 S. Ct. 1144, 107 L. Ed. 2d 1049 (1990); *State* v. *Vincent,* 30 Conn. App. 249, 257–58, 620 A.2d 152, cert. granted, 225 Conn. 917, 623 A.2d 1026 (1993). In this case, the warrant, read as a whole, indicated that evidence related to the crime of risk of injury to a child was to be seized. References to "sexually explicit" material, as well as terms such as "sexual aids" and "Pedophile manuals," gave the executing officers sufficient guidance to prevent a "general, exploratory rummaging in a person's belongings." *Coolidge* v. *New Hampshire,* 403 U.S. 443, 467, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971).

## V

The defendant claims that the police were required to obtain a second search warrant to develop sixty-one

and adults, white shredded shirt, black bead necklace with large white teeth attached to it, black robe with white embroidered design on right shoulder, large wooden walking stick, gold and white colored fur hand warmers, black and white animal fur skin, black lace headband, black fur, leopard skin designed belt, pink and blue cloth type bracelet."

[17] In a related claim, the defendant asserts that certain photographs were unlawfully seized because they were in packages containing both sexually explicit and nonexplicit photographs. This claim is without merit. A person cannot insulate contraband from discovery by hiding it with items that are not evidence of criminal conduct.

rolls of film that they acquired from Robin Zarick during the course of their search of the Zarick estate. He argues that the failure of the Plymouth police to obtain a second warrant prior to developing the film violated his rights under the fourth amendment, as made applicable to the states by the due process clause of the fourteenth amendment, and article first, § 7, of the Connecticut constitution,[18] and rendered the results of that search inadmissable. We disagree.

We need not reach the issue of whether a separate warrant is required to develop film seized pursuant to a lawful search because even if such a warrant were required, the search was consented to by Robin Zarick. She voluntarily surrendered the undeveloped film to the police as an example of her art. Implicit with the surrender of the film was the expectation that such film would be developed. A "search . . . is not unreasonable under . . . the fourth amendment to the constitution of the United States . . . if a person with authority to do so has freely consented . . . . *Schneckloth* v. *Bustamonte,* 412 U.S. 218, 248, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973); *Dotson* v. *Warden,* 175 Conn. 614, 618, 402 A.2d 790 (1978)." (Internal quotation marks omitted.) *State* v. *Reagan,* 209 Conn. 1, 7, 546 A.2d 839 (1988). Whether there was valid consent to a search is a factual question that will not be lightly overturned on appeal. *United States* v. *Sanchez-Jaramillo,* 637 F.2d 1094, 1098 (7th Cir.), cert. denied, 449 U.S. 862, 101 S. Ct. 166, 66 L. Ed. 2d 79 (1980).

The trial court found, and the defendant does not dispute, that Robin Zarick's surrender of the film was

[18] The defendant has made only a cursory reference to article first, § 7, of the Connecticut constitution. He has failed adequately to raise a claim of enhanced protection under the state constitution. Therefore, we address only his fourth amendment claim. *State* v. *Perez,* 218 Conn. 714, 723, 591 A.2d 119 (1991).

voluntary.[19] There was no violation of the defendant's fourth amendment rights as a result of this voluntary surrender of evidence to the police.

## VI

The defendant also claims that the Massachusetts photographs were illegally seized either by Guardian, acting as an agent of the Commonwealth of Massachusetts or by the Massachusetts police. Such an illegal seizure, the defendant argues, tainted the warrant that was subsequently issued as a result of the discovery by the police of the Massachusetts photographs. We disagree.

The determination of whether Guardian was acting as an agent of the state is a question of fact to be determined by the trial court. In this instance, the trial court found that there was no evidence that Guardian was an agent of the state.[20] The evidence supporting the trial court's finding includes the facts that: (1) the policy of turning over questionable photographs to the police

[19] Specifically, the trial court found: "These sixty-one rolls this Court finds admissible because they were consensually turned over by Robin Zarick to Officer Diane Derzewicki . . . . The evidence was uncontradicted and substantial that Robin Zarick in an effort to describe her activity as either legitimate or artistic provided voluntary statements, furnished model releases, displayed photographs and turned over rolls of undeveloped film to the police."

[20] Specifically, the trial court found: "The suggestion that Guardian Photo Lab was an agency of the Auburn Police Department is a suggestion neither warranted nor supported by the evidence. Guardian Photo Lab initiated and promulgated a policy which it implemented by turning over to local police questionable photos. The decision to turn over pictures rested exclusively with the private laboratory. No one from the Auburn Police Department either supervised or randomly checked the development process of Guardian Lab. No instructions, rules or regulations or policy was directed from the Auburn police to Guardian Lab. The evidence unequivocally established that the practice of turning over questionable photos to the local police was consistent with a policy solely formulated and implemented by the Guardian Photo Lab Company. The lab company was not an agency of the Auburn Police Department."

was initiated by Guardian; (2) the decision to turn over specific photographs was entirely up to a Guardian manager; (3) there was no supervision or random checking of Guardian by the police in connection with this policy; and (4) there were no instructions or rules regarding such policy promulgated by the police.

Factual matters are determined by the finder of fact and are not subject to reversal on appeal unless such findings are clearly erroneous. *Groton* v. *Yankee Gas Services Co.,* 224 Conn. 675, 691, 620 A.2d 771 (1993); *Crowell* v. *Danforth,* 222 Conn. 150, 156, 609 A.2d 654 (1992). The trial court's findings that Guardian was not an agent of the state and that the Massachusetts photographs did not improperly come into the possession of the Massachusetts police were not clearly erroneous. Because no seizure of the photographs occurred, the defendant's claim of a violation of his fourth amendment rights is without merit.

## VII

Finally, the defendant claims that the trial court improperly denied his motion to dismiss certain counts against him as multiplicitous and violative of the fifth amendment, as made applicable to the states by the due process clause of the fourteenth amendment, and article second of the Connecticut constitution.[21] A review of the record indicates that the defendant has not preserved his right to challenge the claims he now challenges as multiplicitous and, thus, we do not reach his substantive arguments.

The record indicates that the defendant filed a pretrial motion to dismiss certain counts against him as multiplicitous. This motion failed to identify which

---

[21] The defendant has not adequately raised claims under article second of the Connecticut constitution. Such claims are considered abandoned. See footnotes 15 and 18.

counts the defendant claimed were multiplicitous. In the trial court, the defendant challenged counts 17, 21, 23, 25, 27, 29, 44 and 48 as multiplicitous. On appeal, the defendant claims that counts 7, 8, 16, 18, 20, 22, 24, 26, 28, 35, 37, 39, 41, 43, 45, 51, 52, 57 and 58 are multiplicitous. Because the defendant did not challenge as multiplicitous in the trial court the counts that he now challenges on appeal, he has waived his right to challenge those counts that he challenges on appeal.

The judgment is affirmed.

In this opinion BORDEN and DUPONT, Js., concurred.

BERDON, J., concurring. I write separately because I would order the parties to rebrief the issue of whether there was probable cause to search the defendant's home. *Genovese* v. *Gallo Wine Merchants, Inc.,* 226 Conn. 475, 479, 628 A.2d 946 (1993). As the majority points out, the defendant did not adequately brief the issue, but merely raised it in one sentence. In *Genovese,* we, on our own, raised the applicability of a statute and ordered rebriefing by the parties to discuss that statute. "Certainly, if we may use this newly established procedure to achieve justice on behalf of civil litigants, where only money is involved, we must do likewise when an individual's liberty is at stake." Id., 496–97. (*Berdon, J.,* dissenting.).

Alternatively, I would not reach the merits of the probable cause issue. "Claimed errors not adequately briefed and not fully developed will not be considered by this court." *State* v. *Tatum,* 219 Conn. 721, 742, 595 A.2d 322 (1991). Accordingly, I would treat the issue as having been abandoned by the defendant and leave it to be raised in a different forum.

Furthermore, I am troubled by the analysis of the probable cause issue. The court seems to rely on the "totality of the circumstances" test to support its con-

clusion that there were sufficient facts for the magistrate to find probable cause to search the house. When this court adopted the "totality of the circumstances" test in *State* v. *Barton,* 219 Conn. 529, 594 A.2d 917 (1991), it did so in the context of reviewing a search warrant application based on information provided to the police by a confidential *informant.* The warrant affidavit in *Barton* contained insufficient information to satisfy the *Aguilar-Spinelli* test, which requires a magistrate "to evaluate both the 'basis of knowledge' and the 'veracity' or 'reliability' of an informant upon whose information the police have relied. See [*State* v. *Kimbro,* 197 Conn. 219, 233–37, 496 A.2d 498 (1985)]; see also *Spinelli* v. *United States,* 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969); *Aguilar* v. *Texas,* 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964)." *State* v. *Barton,* supra, 533.

In *Barton,* Chief Justice Peters wrote the following: "When a search warrant affidavit is based on information provided to the police by confidential informants, the magistrate should examine the affidavit to determine whether it adequately describes both the factual basis of the informant's knowledge and the basis on which the police have determined that the information is reliable. If the warrant affidavit fails to state in specific terms how the informant gained his knowledge or why the police believe the information to be trustworthy, however, the magistrate can also consider all the circumstances set forth in the affidavit to determine whether, despite these deficiencies, other objective indicia of reliability reasonably establish that probable cause to search exists." Id., 544.

*Barton* did not hold, as the majority suggests, that "[i]n determining whether probable cause exists to conduct a search, a 'totality of the circumstances' test is used." Rather, in *Barton,* this court held that any deficiency in the informant's reliability or basis of knowl-

edge could be satisfied by considering the "totality of the circumstances." Whether the information furnished by the informant together with other firsthand information supplied by the affiants reaches the level of probable cause does not involve a totality of the circumstances analysis. Likewise, if there is no informant, as in the present case, a totality of the circumstances analysis is inappropriate. The court's use of the totality of the circumstances test to determine whether the information contained in the warrant constitutes probable cause further dilutes the protections of article first, § 7, of the Connecticut constitution. *State* v. *Diaz,* 226 Conn. 514, 560 n.13, 628 A.2d 567 (1993) (*Berdon, J.,* dissenting).

I concur in the result.

KATZ, J., concurring. I concur in the result.