# STATE OF CONNECTICUT *v.* MICHAEL MARSALA
## (14094)

Landau, Spear and Hennessy, Js.

Argued February 26—officially released July 2, 1996

*C. Robert Satti, Jr.*, assistant state's attorney, with whom, on the brief, was *Donald Browne*, state's attorney, for the appellant (state).

*Lauren Weisfeld*, assistant public defender, with whom, on the brief, was *Richard Emanuel*, assistant public defender, for the appellee (defendant).

LANDAU, J. This appeal is from the judgment of the trial court, *Leavitt, J.*, granting the defendant's motion to suppress evidence seized during a police search of the defendant's residence pursuant to a search warrant. Thereafter, the trial court, *Maiocco, J.*, granted the defendant's motion to dismiss the state's information based on his claim that there was insufficient evidence to proceed to trial once the motion to suppress was granted.

Pursuant to General Statutes § 54-96,[1] the state filed a motion for permission to appeal and the motion was granted by the trial court. On appeal, the state claims that the trial court improperly determined that, under the "totality of the circumstances" test adopted by our Supreme Court in *State* v. *Barton*, 219 Conn. 529, 533, 594 A.2d 917 (1991) (*Barton* test), the search warrant affidavit lacked a sufficient basis to allow the issuing magistrate to find probable cause.

The following facts and procedural history are relevant to the resolution of this appeal. The defendant was arrested in October, 1986, by officers from the Monroe police department and charged with violating various

---

[1] General Statutes § 54-96 provides: "Appeals from the rulings and decisions of the superior court, upon all questions of law arising on the trial of criminal cases, may be taken by the state, with the permission of the presiding judge, to the supreme court or to the appellate court, in the same manner and to the same effect as if made by the accused."

narcotics offenses. The arrest stemmed from the seizure of contraband and drug paraphernalia from the defendant's person and residence following the execution of a search warrant. After a jury trial, the defendant was convicted in May, 1987, for two violations of the state dependency producing drug law, General Statutes § 21a-278 (b).[2] Following a series of appeals,[3] the matter was remanded for a new trial in which the trial court examined the search warrant affidavit anew.

In its memorandum of decision issued upon granting the defendant's motion to suppress, the trial court relied on *State* v. *Duntz*, 223 Conn. 207, 613 A.2d 224 (1992), as authority to apply the *Barton* test retroactively. Upon reviewing the search warrant affidavit under the *Barton* test, the trial court determined that the magistrate improperly determined that the affidavit established probable cause because "[t]he entire warrant was based on conjecture and surmise." The court opined that "the

[2] General Statutes (Rev. to 1987) § 21a-278 (b) provides in pertinent part: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance, hallucinogenic substance other than marijuana, amphetamine-type substance, or one kilogram or more of a cannabis-type substance except as authorized in this chapter, and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years; and for each subsequent offense shall be imprisoned not less than ten years nor more than twenty-five years. . . ."

[3] For an entire history, see *State* v. *Marsala*, 15 Conn. App. 519, 545 A.2d 1151, cert. denied, 209 Conn. 816, 550 A.2d 1087 (1988) (*Marsala* I), on appeal after remand, 19 Conn. App. 478, 563 A.2d 730 (1989) (*Marsala* II), rev'd, 216 Conn. 150, 579 A.2d 58 (1990) (*Marsala* III) (in which Supreme Court held good faith exception to exclusionary rule incompatible with article first, § 7, of Connecticut constitution and reversed defendant's conviction); *State* v. *Marsala*, 26 Conn. App. 423, 601 A.2d 542 (1991) (*Marsala* IV), on reconsideration, 27 Conn. App. 291, 605 A.2d 866 (1992) (*Marsala* V) (in which we reconsidered validity of search warrant in light of Supreme Court's decision in *State* v. *Barton*, supra, 219 Conn. 529), rev'd, 225 Conn. 10, 13, 620 A.2d 1293 (1993) (*Marsala* VI) (in which Supreme Court reversed and directed this court to remand case for new trial).

Monroe police warrant does not pass [*Barton*] muster as to a finding of probable cause under 'the totality of the circumstances' test" because "[t]he warrant lacks even a sniff that drugs were being sold by the defendant," and "[n]ot one piece of information in the warrant was either corroborated or substantiated." We disagree with the result reached by that court.

## I

Because the search warrant affidavit in this case was executed in 1986, and the *Barton* decision was rendered in 1991, as a threshold matter, we must determine whether the trial court was correct in applying the *Barton* test retroactively. While the state disputes the conclusion reached by the trial court after it reviewed the affidavit pursuant to *Barton* (see part II of this opinion), the state nevertheless asserts that the court was correct to apply the test retroactively.

The defendant argues that because the *Barton* test supplanted the two-pronged *Aguilar-Spinelli*[4] test previously used by our courts when reviewing search warrant affidavits; see *State* v. *Kimbro*, 197 Conn. 219, 496 A.2d 498 (1985); we should recognize the *Barton* test as a "clear break" from the old rule and not apply it retroactively. The defendant also argues that the state waived its right to assert the validity of the search warrant under the *Barton* test. Neither argument has merit.

As a general rule, "judicial decisions apply retroactively. *Robinson* v. *Neil*, 409 U.S. 505, 507–508, 93 S. Ct. 876, 35 L. Ed. 2d 29 (1973). Indeed, a legal system based on precedent has a built-in presumption of retroactivity. *Solem* v. *Stumes*, 465 U.S. 638, 642, 104 S. Ct. 1338, 79 L. Ed. 2d 579 (1984)." (Internal quotation marks

---

[4] *Aguilar* v. *Texas*, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964), and *Spinelli* v. *United States*, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969).

omitted.) *State* v. *Ryerson*, 201 Conn. 333, 339, 514 A.2d 337 (1986). Since the *Barton* decision, our appellate courts have consistently applied the *Barton* test retroactively. See, e.g., *State* v. *Duntz*, supra, 223 Conn. 207 (search warrant executed in October, 1986); *State* v. *Rodriguez*, 27 Conn. App. 307, 606 A.2d 22 (1992) (search warrant executed in June, 1990); *State* v. *DeFusco*, 27 Conn. App. 248, 606 A.2d 1 (1992), aff'd, 224 Conn. 677, 620 A.2d 746 (1993) (search warrant executed in October, 1991); *State* v. *Hunter*, 27 Conn. App. 128, 604 A.2d 832 (1992) (search incident to lawful arrest conducted in January, 1990); *State* v. *Anziano*, 26 Conn. App. 667, 603 A.2d 415 (1992) (search warrant executed in January, 1990); *State* v. *Payne*, 25 Conn. App. 428, 594 A.2d 1035, cert. denied, 220 Conn. 915, 597 A.2d 337 (1991) (arrest warrant executed in June, 1989). We conclude, therefore, that the trial court correctly applied the *Barton* test retroactively.

## II

The state next claims that the trial court improperly failed to determine that, under the *Barton* test, the search warrant affidavit presented a substantial basis on which the issuing magistrate could conclude that probable cause existed.

In *State* v. *Barton*, supra, 219 Conn. 544, our Supreme Court adopted the "totality of the circumstances" standard for determining probable cause used by the federal courts pursuant to the decision of the United States Supreme Court in *Illinois* v. *Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). Under the totality of the circumstances standard, "[w]hen a search warrant affidavit is based on information provided to the police by confidential informants, the magistrate should examine the affidavit to determine whether it adequately describes both the factual basis of the informant's knowledge and the basis on which the police have deter-

mined that the information is reliable. If the warrant affidavit fails to state in specific terms how the informant gained his knowledge or why the police believe the information to be trustworthy, however, the magistrate can also consider all the circumstances set forth in the affidavit to determine whether, despite these deficiencies, other objective indicia of reliability reasonably establish that probable cause to search exists. In making this determination, the magistrate is entitled to draw reasonable inferences from the facts presented. When a magistrate has determined that the warrant affidavit presents sufficient objective indicia of reliability to justify a search and has issued a warrant, a court reviewing that warrant at a subsequent suppression hearing should defer to the reasonable inferences drawn by the magistrate. . . .

"If a warrant affidavit does not provide a substantial basis for the finding of probable cause, then evidence or contraband seized in the execution of that warrant will be suppressed, even when the officer executing the warrant has relied in good faith on its authority. *State* v. *Marsala*, 216 Conn. 150, 171, 579 A.2d 58 (1990)." *State* v. *Barton*, supra, 219 Conn. 544–45.

"Probable cause, broadly defined, comprises such facts as would reasonably persuade an impartial and reasonable mind not merely to suspect or conjecture, but to believe that criminal activity has occurred. . . . Probable cause to search exists if: (1) there is probable cause to believe that the particular items sought to be seized are connected with criminal activity; and (2) there is probable cause to believe that the items named will be found in the place to be searched." (Citations omitted; internal quotation marks omitted.) Id., 547–48. " 'The role of an appellate court reviewing the validity of a warrant is to determine whether the affidavit at issue presented a substantial factual basis for the magistrate's conclusion that probable cause existed.' *State* v.

*Johnson,* 219 Conn. 557, 565, 594 A.2d 933 (1991)." *State* v. *Duntz,* supra, 223 Conn. 215.

"This court's scope of review, in evaluating the existence of probable cause, is limited to the facts that appear on the four corners of the affidavit or facts that may be properly inferred from those facts. *State* v. *Couture,* 194 Conn. 530, 536, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985). In so doing, we must use common sense; *State* v. *Castano,* 25 Conn. App. 99, 101, 592 A.2d 977 (1991); and defer to the reasonable inferences drawn by the [issuing] magistrate. *State* v. *Barton,* supra, 219 Conn. 544–45. Our role is to determine whether the affidavit at issue presented a substantial factual basis for the magistrate's conclusion that probable cause existed. *State* v. *Johnson,* supra, 219 Conn. 565." (Internal quotation marks omitted.) *State* v. *Anziano,* supra, 26 Conn. App. 672.

We now consider the search and seizure warrant affidavit presented in this case in light of these principles. The Monroe police department submitted the warrant application for ex parte judicial approval on October 1, 1986. The affidavit contained the following information: "A named police officer from Trumbull notified the Monroe police that the defendant was a heavy seller of cocaine and other illegal drugs. The police had also received a telephone call from a resident of Swendsen Drive reporting that he had seen what he believed to be drug activity at [Marsala's residence at] 154 Swendsen Drive, that he had seen many vehicles drive up to the house, and that a bearded man came from the house, approached each vehicle and engaged in some sort of transaction. When the vehicles left, the man returned to the house. This 'concerned citizen' then stated that this activity could be characterized as 'heavy' with vehicles coming and going at all times of the day and night. In light of these reports, Monroe

police drove by the house several times every day and night for a period of time and observed numerous vehicles occupied by young males in front of the house and a man walking between the house and the vehicles. On September 15, 1986, a confidential informant came to the police department in Monroe and told of what he believed to be heavy drug trafficking at 154 Swendsen Drive, supplied a list of thirteen marker numbers of vehicles that had been seen frequently stopping at that address at all times of the day and night and that some type of transaction would take place between the occupants of the cars and Michael Marsala, who was known to the informant as the occupant of 154 Swendsen Drive. The police then continued their surveillance. The informant again came to the police department on September 29, 1986, and gave similar information about the activity concerning Michael Marsala and the address in question. The informant also stated that extremely heavy activity was seen during the weekend of September 27 and 28, 1986.

"On September 23, 1986, another police officer told one of the affiants that another informant had told him that he was aware of a man named Mike on Swendsen Drive who was selling cocaine to young people who drove up to the front of the house and that transactions took place right in the street. The following day a resident of the same neighborhood as 154 Swendsen Drive telephoned one of the affiants to express concern about what he felt was frightening activity going on in front of that address." *State* v. *Marsala*, supra, 27 Conn. App. 294–95.

Upon reviewing the information contained within the four corners of the search warrant affidavit; see *State* v. *Couture*, supra, 194 Conn. 536; we conclude that the independent Monroe police investigation sufficiently corroborated the information provided by the confidential informants. See *Illinois* v. *Gates*, supra, 462 U.S.

213. For that reason, the informants' opinions that the defendant was dealing drugs, although not credible standing alone, could reasonably have been believed and evaluated along with the other information contained in the affidavit. *State* v. *Duntz*, supra, 223 Conn. 217. Under the *Barton* standard, therefore, the issuing magistrate was free to consider not only the information derived from the police investigation, but also the opinions and observations of the anonymous sources even though their reliability had not been established.

A reviewing court should not invalidate a warrant as long as the inferences drawn by the issuing magistrate are reasonable under all of the circumstances set forth in the affidavit regardless of whether that court would have drawn the same inferences. *State* v. *Barton*, supra, 219 Conn. 529. On the basis of the informants' opinions that the defendant was dealing drugs, the frequent and brief visits to the defendant's home during which the occupants of the vehicles would be approached by a man with whom they would engage in a transaction, and the statements that the visits occurred during all times of the day and night, the issuing magistrate could reasonably have inferred that either narcotics sales or trafficking was occurring at the defendant's residence. Thus, after considering the search warrant affidavit under the "totality of the circumstances test," we conclude that the affidavit presented a substantial factual basis to support the magistrate's conclusion that probable cause existed. See *State* v. *Marsala*, supra, 27 Conn. App. 291.[5]

The judgment is reversed and the case is remanded with direction to deny the defendant's motion to suppress and for further proceedings.

In this opinion the other judges concurred.

---

[5] Although our conclusion here is consistent with this court's conclusion in *State* v. *Marsala*, 27 Conn. App. 291, 605 A.2d 866 (1992) (*Marsala* V), we acknowledge that *Marsala* V is not controlling. See *State* v. *Marsala*, 225 Conn. 10, 13, 620 A.2d 1293 (1993).