[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION DEFENDANT'S REVISED MOTION TO CT Page 5668 SUPPRESS DATED APRIL 15, 1998
I.
Robert F. Lepri, the defendant, resides at 40 Houston Street in Waterbury and stands charged with two counts of sexual assault in the first degree and two counts of risk of injury.[1] On April 24, 1997, a judge of this court issued a search and seizure warrant for Lepri's Houston Street home. The affidavit in support of the warrant application indicated that officers of the Waterbury Police Department had received complaints from minors concerning the defendant's sexual involvement with them. The warrant authorized a search for "pornographic video tapes, . . . sexually explicit materials" and other things which the applying police officials reported in their affidavit to be traditionally associated with pedophilia.[2] Subsequently, Lepri's home was searched during the early evening hours of April 24th and numerous items were seized. Thereafter, at approximately 11 p. m., after receiving information that Lepri was seen by a neighbor removing items from the home of Mary Motyka, his next door neighbor who lives at 34 Houston Street, Waterbury police officers proceeded to that address. While on these premises, they seized and subsequently searched two large garbage bags, a cardboard box containing video tapes and two briefcases. State's exhibits ## 4, 5, 7.
By this motion, Lepri moves to suppress the search and seizures at his 40 Houston Street home on the ground that the issuing magistrate relied upon an affidavit that contained stale information. He also moves to suppress the seizure of the containers found at 34 Houston Street and the subsequent searches of them by the police. He contends that he had a constitutionally protected expectation of privacy in these containers, and thus the subsequent warrantless seizures were illegal. Lepri claims that the seizures by the police at both his home and 34 Houston Street violated his rights secured under both the state and the federal constitutions.
The court held evidentiary hearings on Lepri's revised motion to suppress April 14 and 16, 1998. The motion is denied.
 II.
From the credible evidence, the court finds the following CT Page 5669 facts. On April 24, 1997, Lieutenant Kathleen Wilson and Detective Karin Cerutti submitted an affidavit to a judge of this court to search Robert Lepri's home at 40 Houston Street. In this document, the police officers reported that on March 26, 1997 a complaint of the sexual assault of a twelve year old boy was received. On April 10, 1997, the child was interviewed and a written statement was taken from him. In this statement, according to the affidavit, the child reported that Lepri performed an act of oral sex upon him at the defendant's home while Lepri played a pornographic movie in his VCR. The youngster had given the affiants the names of twelve other boys whom the youngster knew to have been at the defendant's residence. Also, in their affidavit, the police officers indicated that they had obtained a second statement on April 15, 1997 from a thirteen year old boy. That child related that he had been at the defendant's home during the week previous and that the defendant attempted to commit a sexual act upon him. The police officers also stated that this thirteen year old maintained contact with the defendant via a pager; was used by the defendant to solicit other youngsters for his sexual gratification and that four of this youngster's friends had admitted engaging in oral sex with the defendant at the his home. The police officers also noted in detail that it is customary for pedophiles to use sexually explicit materials, including video tapes, and to keep photographs of the children with whom they are involved, but that they rarely dispose of these items. See Defendant's exhibit #4 set forth in Appendix "A".
On April 24, 1997, after the judge issued the search and seizure warrant, Waterbury police officers, including Lieutenant Wilson, Detective William Howard Jones, and Officer Elizabeth Ann Naylor, who also resides in this Houston Street neighborhood, executed it at 40 Houston Street, Lepri's residence. The search concluded at approximately 10:30 p. m. According to the return on the warrant, the following items were seized: a photo album, eight video tapes, photographs, magazines, a calender, personal papers, a box of small radios, and two answering machine cassettes.
Shortly after concluding the search and seizures at Lepri's home, Officer Naylor received a telephone call from a neighbor. This person reported observing the defendant toward the rear of 34 Houston Street, the home of Mary Motyka, an 88 year old woman, and seeing Lepri removing items to his automobile parked in the Motyka driveway. (Earlier in the evening, while searching Lepri's CT Page 5670 house, the officers found a quit claim deed conveying Motyka's residence to the defendant.) Naylor informed Detective Jones of the neighbor's report and was told by him to go to Mrs. Motyka's residence to secure the area. At approximately 11:00 p. m., Naylor, Jones, and Detective Coleman arrived together at the home of Mary Motyka. They proceeded down the driveway and saw Lepri next to his automobile. Naylor and Jones observed two briefcases, a large garbage bag which was tied at the top,[3] and an open cardboard box containing numerous videotapes in the immediate vicinity of the defendant. In the open box, Naylor and Jones observed video covers depicting sexually suggestive activities. Lepri told the officers they could not come on the property. At this time, Mrs. Motyka was approximately fifteen feet away, exiting a cellar hatchway and dragging another large garbage bag. Detective Jones heard Lepri instruct Mrs. Motyka to tell the police that the containers on the ground in his immediate vicinity were hers. Lepri said nothing to the police concerning the contents of the second garbage bag that was then in Mrs. Motyka's hands. Subsequently, when Lepri began to interfere with the police procedures, he was arrested.
Officer Naylor explained to Mrs. Motyka the nature of the police investigation concerning Lepri and she then consented to a search of her residence and yard. Mrs. Motyka subsequently signed a consent to search document for the police officers. State's exhibit #6.[4]
Sometime prior to the search and seizures at the Motyka home on April 24, 1997, Mrs. Motyka had given Lepri permission to store materials in the basement of her home.
 III.
Lepri claims that the search warrant for 40 Houston Street was issued in error because it was not supported by probable cause. The predicate for this assertion is that the facts revealed in the affidavit supporting the warrant application constituted, in a constitutional sense, stale information. Specifically, the defendant argues that the April 24th warrant authorized a search for videos which he suggests are "easily transferable," but was based on criminal activity with a thirteen year old which took place more than two weeks earlier. This court is not persuaded.
"Probable cause to search exists if: (1) there is probable CT Page 5671 cause to believe that the particular items sought to be seized are connected with criminal activity; and (2) there is probable cause to believe that the items named will be found in the place to be searched." State v. Barton, 219 Conn. 529, 548 (1991);State v. Bova, 240 Conn. 210, 231-32 (1997). "Probable cause, broadly defined, comprises such facts `as would reasonably persuade an impartial and reasonable mind not merely to suspect or conjecture, but to believe' that criminal activity has occurred." State v. Barton, supra, 548; State v. Marsala,42 Conn. App. 1, 6, cert. denied, 239 Conn. 912 (1996).
"[T]he determination of whether probable cause exists to issue a search warrant under article first, section 7 of our state constitution, and under the fourth amendment to the federal constitution, is made pursuant to a "totality of the circumstances' test. State v. Barton, 219 Conn. 529, 544, 594 A.2d 917 (1991);Illinois v. Gates, 462 U.S. 213, 231-32, 103 S.Ct. 2317,76 L.Ed.2d 527 reh denied, 463 U.S. 1237, 104 S.Ct. 33, 77 L.Ed.2d 1453
(1983)." State v. Rodriquez, 223 Conn. 127, 134 (1992). Under this test, "[i]n determining the existence of probable cause to search, the issuing judge must make a practical, nontechnical decision whether, given all the circumstances set forth in the warrant affidavit, including the veracity and the basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." (Internal quotation marks omitted.) State v. Diaz, 226 Conn. 514, 524-25 (1993);State v. Bova, supra, 240 Conn. 233.
This court, reviewing the validity of a warrant, "must determine that the affidavit presented a substantial factual basis upon which the [issuing judge] could conclude that probable cause existed."State v. Barton, supra 219 Conn. 552; State v. Johnson,219 Conn. 557, 565 (1991); State v. Marsala, supra, 42 Conn. App. 7. In making this determination, the reviewing court "is confined to the `four corners' of the warrant." State v. Vincent, 229 Conn. 164, 168 (1994);State v. Marsala, supra, 7. The court "may consider only the information that was actually before the issuing judge at the time he or she signs the warrant, and the reasonable inferences to be drawn therefrom." State v. Ives, 37 Conn. App. 40, 44-45 (1995), quotingState v. Duntz, 223 Conn. 207, 216 (1992); State v. Zarick,227 Conn. 207, 222 (1993). In conducting our review, "We view the information in the affidavit in the light most favorable to upholding the magistrate's determination of probable cause. . . . In a doubtful or marginal case . . . our constitutional preference for a judicial determination of probable cause leads us to afford deference to the CT Page 5672 [issuing judge's] determination." State. Bova, supra, 240 Conn. 232, quoting State v. Vincent, 229 Conn. 164, 171-172 (1994).
In applying these legal principles to the search warrant affidavit for the Lepri residence, this court concludes that the issuing judge on April 24, 1997 could reasonably have determined that there was probable cause to believe not only that two youngsters had been sexually victimized by the defendant at his Houston Street home in March and April 1997, but that Lepri was engaged in on-going pedophilia and the materials, including sexually explicit videos, customarily associated with such criminal activity would be found at his residence. The court is of the opinion, after conducting its review, that it must defer to the issuing judge's decision to issue the warrant and Lepri's challenge based on staleness must fail. State v. Bova,240 Conn. 210 (1997); State v. Vincent, 229 Conn. 164 (1994); State v.Zarick, 227 Conn. 207 (1993); State v. Johnson, 219 Conn. 210
(1997); State v. Ives, 37 Conn. App. 40 (1995), cert. den.234 Conn. 906 (1995).
 IV.
Concerning the police warrantless searches and seizures at Mary Motyka's residence, 34 Houston Street, Lepri claims that his rights under the fourth amendment and under article first, section 7
of the Connecticut constitution were violated. Specifically, his claim is based upon the federal Supreme Court's decision inKatz v. United States, 389 U.S. 347 (1967) and our supreme court's holding in State v. Hill, 237 Conn. 81 (1996). Based upon this jurisprudence, the defendant argues that he had an expectation of privacy in each of the containers found by the police at the Motyka residence and that this expectation was one that society would hold to be objectively reasonable. He bolsters this position further by contending that since he held legal title to this real property and because Mrs. Motyka never validly consented to the police officers presence or search on her property, the searches and seizures were manifestly unconstitutional. Defendant's Proposed Findings of Fact andConclusions of Law dated April 21, 1998 pp. 7-9. This court is not persuaded.
Lepri has the burden of proving his standing to assert that his privacy rights secured under the federal and state constitutions have been infringed by governmental conduct. As he frames the issue and based on the legal authority upon which he relies, the court agrees that for the defendant to prevail he CT Page 5673 must prove that at the time of the search, he had not only a subjective expectation of privacy in each container, but that expectation is one that the society would consider to be reasonable. State v. Hill, 237 Conn. 81 (1996). However, as pointed out in Hill, the resolution of this issue does not turn upon a proprietary or property interest in the property searched, but rather is based upon whether the person claiming a constitutional infringement can prove a reasonable expectation of privacy in the situs of the search. State v. Hill, supra, 93.
Based upon our view of the facts, Mrs. Motyka consented to the presence of the police officers at her residence and agreed to permit them to search not only her home, but also her yard. Thus, the officers were legitimately on her premises and were given by her the right to search the property under her control.[5] Lepri, when initially confronted by the police at the rear of the Motyka home in the driveway, instructed Mrs. Motyka to tell the police that the garbage bag, the two briefcases, and the open box with the videos exposed, were hers. Thus, in the opinion of the court, by this conduct, the defendant abandoned any reasonable expectation of privacy in any one of those containers. The court, here, is persuaded by the learned opinion of the late and distinguished Judge T. F. Gilroy Daly, who, in 1992, reviewed the constitutional argument of another Waterbury resident and found it as unpersuasive then as we find Lepri's contention today. U.S. v. Santopietro, 809 F. Sup. 1001
(D.Conn. 1992), citing inter alia United States v. Rahme,813 F.2d 31, 34 (2 Cir. 1987) (ownership of the container does not dispose of the standing issue); United States v. Torres,949 F.2d 606, 608 (2 Cir. 1991) (disavowing privacy expectation; not vigilantly protecting the right to exclude others); United Statesv. Springer, 946 F.2d 1012, 1017 (2 Cir. 1991), and United Statesv. Lee, 916 F.2d 814, 818 (2 Cir. 1990) (standing lost by abandonment). — Concerning the garbage bag that the 88 year old Mary Motyka had hauled out of the cellar, it was obviously under her control and she consented to its search by the police. Lepri himself never voiced before the police officers any interest in it or its contents. Thus, we conclude the search and seizure of that garbage bag did not infringe upon Lepri's privacy rights secured under either the federal or state constitutions. State v.DeFusco, 224 Conn. 627, 638-39 (1993); U.S. v. Santopietro,809 F. Sup. 1001 (D.Conn. 1992); see also U.S. v. Saadeh,61 F.3d 510, 517-18 (7 Cir. 1995), cert. denied 116 S.Ct. 521 (1995);U.S. v. Evans, 27 F.3d 1219-30, 1229 (7 Cir. 1994). CT Page 5674
This motion to suppress is denied and an order may enter accordingly.
William Patrick Murray, Judge
APPENDIX "A"
The facts establishing the grounds for issuing a Search and Seizure Warrant are the following:
1. THAT THE AFFIANTS, LT. KATHLEEN WILSON AND DETECTIVE KARIN CERUTTI. ARE BOTH REGULAR MEMBERS OF THE WATERBURY POLICE DEPARTMENT HAVING A COMBINED TOTAL OF 30 YEARS OF POLICE TRAINING AND EXPERIENCE. WE ARE CURRENTLY ASSIGNED TO THE DETECTIVE BUREAU WHERE WE HAVE BOTH CONDUCTED NUMEROUS SEXUAL ASSAULT INVESTIGATIONS WHICH HAVE LED TO BOTH ARRESTS AND CONVICTIONS.
2. THAT ON 3/26/97 THE WATERBURY POLICE DEPARTMENT RECEIVED A COMPLAINT OF A SEXUAL ASSAULT OF A 12 YEAR OLD BOY. THE NAME AND ADDRESS OF SAID VICTIM ARE NOT BEING DISCLOSED IN ORDER TO COMPLY WITH THE REQUIREMENT OF CONN. GEN. STATUTE 54-86E.
3. THAT ON 4/10/97 DETECTIVE CERUTTI OBTAINED A STATEMENT FROM A 12 YEAR OLD VICTIM WHO STATED THAT HE MET "ROB" ON SATURDAY, MARCH 22ND, 1997 WHILE OVER AT A FRIEND'S HOUSE. SAID 12 YEAR OLD VICTIM SAID THAT THEY DROVE TO "ROB'S" HOUSE IN A GREY STATION WAGON AND THAT "ROB" LIVES IN A DIRTY BLOCK STYLE HOUSE. THE 12 YEAR OLD VICTIM SAID THAT ONCE INSIDE OF "ROB'S" HOUSE. "ROB" TOLD HIM TO SIT ON THE LIVING ROOM COUCH AND TAKE OFF HIS CLOTHES. THE 12 YEAR OLD VICTIM TOOK OFF HIS PANTS BUT NOT HIS UNDERWEAR. THEN "ROB" PLAYED A PORNOGRAPHIC MOVIE IN THE VCR. THE 12 YEAR OLD VICTIM SAID THAT "ROB" THEN REACHED INSIDE OF THE VICTIM'S UNDERWEARS. PULLED HIS PENIS OUT AND SUCKED ON IT. PERFORMING ORAL SEX ON HIM. THE 12 YEAR OLD VICTIM SAID THAT AFTER "ROB" WAS FININSHED WITH HIM HE GAVE HIM $10.00 AND TOLD HIM NOT TO TELL ANYBODY ABOUT IT. THEN "ROB" DROVE SAID 12 YEAR OLD VICTIM TO ROLLERMAGIC WHERE HE MET UP WITH HIS FRIEND WHO IS ALSO A VICTIM OF "ROB'S".
4. THAT SAID VICTIM GAVE THESE AFFIANTS THE NAMES OF 12 OTHER BOYS WHOM HE KNOWS HAVE BEEN TO ROBERT LEPRI'S HOUSE ON SEVERAL OCCASIONS. THAT THESE AFFIANTS TOOK SAID VICTIM TO POSITIVELY IDENTIFY ROBERT LEPRI'S HOUSE. THAT SAID VICTIM DID POSITIVELY IDENTIFY ROBERT LEPRI'S HOUSE AS A SMALL BRICK HOUSE WITH A GREY STATION WAGON PARKED IN THE DRIVEWAY AND A CHAIN LINK FENCE CT Page 5675 AROUND THE FRONT YARD. ROBERT LEPRI'S HOUSE IS LOCATED AT #40 HOUSTON STREET, IN WATERBURY, CT. SAID VICTIM SAID THAT THAT IS THE PLACE WHERE HE WAS SEXUALLY ASSAULTED.
5. THAT SAID AFFIANTS OBTAINED A STATEMENT FROM 13 YEAR OLD VICTIM ON 4/15/97. THIRTEEN YEAR OLD VICTIM SAID THAT HE HAS KNOWN "ROB" FOR 3 YEARS. SINCE GRAMMER SCHOOL. THAT HE MET "ROB" THROUGH A FRIEND AND THAT HE HAS BEEN OVER AT "ROB'S" HOUSE AT LEAST TWICE. THE LAST TIME BEING LAST WEEK. THAT "ROB" PICKED HIM UP AT HIS HOUSE IN HIS GREY STATION WAGON AND DROVE HIM TO HIS HOUSE AFTER DARK. THAT ONCE INSIDE "ROB'S" HOUSE HE SAT ON THE LIVING ROOM COUCH AND ROBERT LEPRI PLAYED A PORNOGRAPHIC MOVIE IN THE VCR. THAT HE AND "ROB" WERE WATCHING THE MOVIE AND "ROB" ATTEMPTED TO GRAB 13 YEAR OLD VICTIM'S GENITALS. 13 YEAR OLD VICTIM RESISTED THE ADVANCE AND LEFT "ROB'S" HOUSE.
6. SAID THIRTEEN YEAR OLD VICTIM SAID THAT "ROB" HAS NEVER TOUCHED HIM SEXUALLY IN ANY WAY. IN EXCHANGE FOR THIS. HE MUST BRING A NEW FRIEND TO "ROB" EVERY TIME HE GOES OVER TO HIS HOUSE. SAID 13 YEAR OLD VICTIM SAID THAT "ROB" ALWAYS ASKS IF THE NEW FRIEND THAT HE'S BRINGING OVER WILL LET HIM "DO IT TO THEM" FOR MONEY OR IF HE THINKS THAT THEY WILL "DO IT TO HIM" FOR MONEY. SAID 13 YEAR OLD VICTIM STAYS IN TOUCH WITH "ROB" VIA A PAGER THAT "ROB" HAD ACTIVATED FOR HIM. THE 13 YEAR OLD VICTIM SAYS THAT HE INVITES A FRIEND OVER TO HIS HOUSE. CALLS "ROB" TO LET HIM KNOW THAT A NEW FRIEND IS THERE AND THEN "ROB" COMES OVER A SHORT TIME LATER AND PICKS THEM UP. "ROB" DROPS THE 13 YEAR OLD VICTIM OFF SKATING OR AT MCDONALDS AND PAYS HIS WAY. THEN HE TAKES THE NEW FRIEND TO HIS HOUSE. WHEN HE'S FINISHED HE DROPS THE NEW FRIEND OFF. THE 13 YEAR OLD VICTIM SAID THAT THAT IS HOW "ROB" GOT THE AFOREMENTIONED 12 YEAR OLD VICTIM.
7. SAID THIRTEEN YEAR OLD VICTIM TOLD THESE AFFIANTS THAT 4 OF HIS FRIEND'S ADMITTED TO HIM THAT THEY HAVE BEEN OVER "ROB'S" HOUSE AND HAVE "SUCKED HIS DICK". THAT THESE 4 FRIEND'S ARE 4 OUT OF THE 12 NAMES THAT THE 12 YEAR OLD VICTIM GAVE US. THAT "ROB" RIDES THEM AROUND IN HIS CAR. TAKES THEM TO MCDONALD'S AND SKATING AND "ROB" PAYS THEIR WAY EVERY TIME THAT THEY GO OUT WITH HIM.
8. THAT THROUGH FURTHER INVESTIGATION IT WAS FOUND THAT "ROB" IS ROBERT LEPRI OF #40 HOUSTON STREET IN WATERBURY, CT. THAT HE HAS SEVERAL VEHICLES LISTED TO HIM. ONE BEING A GREY STATION WAGON. CT. REG 7000. CT Page 5676
9. THAT THESE AFFIANTS KNOW THROUGH TRAINING AND EXPERIENCE THAT PEDOPHILES ARE PERSONS WHOSE SEXUAL OBJECTS ARE CHILDREN. THEY RECEIVE SEXUAL GRATIFICATION AND SATISFACTION FROM ACTUAL PHYSICAL CONTACT WITH CHILDREN. AS WELL AS FROM FANTASY INVOLVING THE USE OF PICTURES OR OTHER PHOTOGRAPHIC OR ART MEDIA. THEY USE COMPUTERS TO COMMUNICATE WITH EACH OTHER AND OTHER VICTIMS. AND TO TRANSMIT OTHER SEXUALLY EXPLICIT MATERIAL TO ONE ANOTHER ALONG WITH THE NAMES AND ADDRESSES OF OTHER VICTIMS AND OTHER PEDOPHILES. THEY EMPLOY PHOTO SCANNING EQUIPMENT AND THEY STORE THIS INFORMATION ON THEIR COMPUTER HARD DRIVES AND/OR FLOPPY DISKS, CD'S AND TAPES. THEY COLLECT SEXUALLY EXPLICIT MATERIALS, INCLUDING BUT NOT LIMITED TO PHOTOGRAPHS, MAGAZINES, MOTION PICTURES, VIDEO TAPES, BOOKS, AND PHOTOGRAPHIC SLIDES, WHICH MATERIALS ARE USED FOR PERSONAL SEXUAL GRATIFICATION. THAT PEDOPHILES EMPLOY SEXUALLY EXPLICIT MATERIALS, INCLUDING THE TYPES PREVIOUSLY MENTIONED. FOR THE PURPOSE OF LOWERING THE INHIBITIONS OF CHILDREN, AS WELL AS FOR DEMONSTRATING DESIRED SEXUAL ACTS BEFORE, DURING, AND AFTER SEXUAL ACTIVITY WITH CHILDREN. THEY RARELY, IF EVER, DISPOSE OF SEXUALLY EXPLICIT MATERIAL, PARTICULARLY WHEN IT WAS USED IN THE SEDUCTION OF CHILDREN.
11. THAT PEDOPHILES FREQUENTLY CORRESPOND WITH ONE ANOTHER FOR THE PURPOSE OF SHARING INFORMATION AND IDENTITIES OF VICTIMS, AS A MEANS OF GAINING STATUS, TRUST ACCEPTANCE, AND PSYCHOLOGICAL SUPPORT AND THEY RARELY DESTROY CORRESPONDENCE RECEIVED FROM OTHER PEDOPHILES.
12. THAT PEDOPHILES OBTAIN, COLLECT, AND MAINTAIN PHOTOGRAPHS OF THE CHILDREN WITH WHOM THEY ARE OR HAVE BEEN INVOLVED. SUCH PHOTOGRAPHS MAY DEPICT CHILDREN FULLY CLOTHED, IN VARIOUS STATES OF UNDRESS, OR TOTALLY NUDE. PEDOPHILES RARELY, IF EVER, DISPOSE OF SUCH PHOTOGRAPHS; SUCH PHOTOGRAPHS ARE CONSIDERED BY PEDOPHILES TO BE A TREASURED POSSESSION.
13. THAT BASED ON THE ABOVE FACTS AND INFORMATION THESE AFFIANTS BELIEVE THAT PROBABLE CAUSE HAS BEEN ESTABLISHED AND RESPECTFULLY REQUEST A SEARCH AND SEIZURE WARRANT BE ISSUED FOR THE HOUSE LOCATED AT #40 HOUSTON STREET, WATERBURY, CT.
The undersigned ("X" one) [X] has not presented this application in any other court or to any other judge.
 [ ] has presented this application in another court or to another judge (specify)
CT Page 5677
This application consists of this form plus _____ pages attached hereto and made a part hereof.
Wherefore the undersigned requests that a warrant may issue commanding a proper officer to search said person or to enter into or upon said place or thing, search the same, and take into custody all such property.

STATE OF CONNECTICUT
=========================================================================
CITY/TOWN | DATE | SIGNATURE AND TITLE OF AFFIANT
__________________________|____________|_________________________________
* | |
__________________________|____________|_________________________________
* | |
__________________________|____________|_________________________________
JURAT | Subscribed and |DATE |SIGNED (Judge of the Superior
 | sworn to before | | Court)
 | me on: | |
=========================================================================